**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| STEPHEN L. CASKEY | : |
| Claimant, | : |
| v. | : CASE NO. 5:09-CV-366 (MTT) |
| | : Social Security Appeal |
| MICHAEL ASTRUE, | : |
| Commissioner of Social Security, | : |
| Respondent. | : |

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Claimant's application for a period of disability and disability insurance benefits, finding that he was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court's role in reviewing claims brought under the Social Security Act

is a narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir. 1973) (per curiam). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate that he/she suffers from an impairment that prevents him/her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1 *et seq*.

---

[1]Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

Under the regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. 20 C.F.R. § 404.1520, app. 1, pt. 404. First, the Commissioner determines whether the claimant is working. If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. Next, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations (the "Listing"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUES

I. **Did the ALJ err in failing to properly evaluate one of the state agency medical opinions?**

II. **Did the ALJ err in failing to perform a Psychiatric Review Technique Form?**

## Administrative Proceedings

Claimant, who was approved for disability benefits in April 1994 but stopped receiving them at some point thereafter, filed applications for a period of disability, Disability Insurance Benefits and Supplemental Security Income on March 21, 2007. (Tr. 106-110.) Upon the denial of his application and after reconsideration, Claimant timely filed a request for a hearing, and on May 14, 2008, a hearing was held. (Tr. 26-47.) On September 4, 2008, the ALJ entered an unfavorable ruling (Tr. 9-15), and the Appeals Council subsequently denied his request for review. (Tr. 1-3). This appeal followed.

## Statement of Facts and Evidence

Claimant's applications for benefits allege a disability beginning on July 12, 2003, due to back, left shoulder and neck pain, knee and hip problems, tendonitis in both hands and arms, and leg problems. (Tr. 129.) After careful consideration of the record, including hearing testimony from the vocational expert and Claimant, the ALJ concluded that Claimant suffered from arthralgias, low average IQ, and poor right eye vision. (Tr. 11.) Although the ALJ considered these impairments to be severe within the meaning of the Regulations, he concluded that the impairments, or any combination of alleged impairments, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12.) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); that Claimant could not perform his past relevant work; and that there were jobs which existed in significant numbers in the national economy that Claimant could perform.

(Tr. 13-14.)

## DISCUSSION

**I.  Did the ALJ err in failing to properly evaluate one of the state agency medical opinions?**

Claimant's first assertion of error is that the ALJ failed to evaluate and properly consider the report of the consultative physician, Dr Meck, in violation of 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d) (2009), which require that every medical opinion received by the ALJ be evaluated without regard to its source. (R. 10 at 12.) Claimant argues that in fulfilling the mandate of the regulations, an ALJ must provide particulars as to the weight he assigns the different medical opinions and further specify his reasons for doing so. *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir. 1987). In response, the Commissioner asserts that the ALJ fully discussed the opinion rendered by Dr. Meck (Tr. 12); and further notes that Dr. Meck was a consultative examiner whose opinion is not due the deference given to a treating physician, citing *McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987) as authority. (R. 12 at 7.) In his argument, Claimant concedes that Dr. Meck was a merely a consultative physician but characterizes the issue as "immaterial" (R. 13 at 5) despite substantial authority establishing the distinction between the respective roles of consultative as opposed to treating physicians and the manner in which their opinions are to be weighed and considered by the ALJ pursuant to the Act. *See. eg., Moore v. Astrue,* 2009 WL 1025389 (M.D. Ga., 2009); accord, *Broughton v. Heckler,* 776 F.2d 960 (11th Cir. 1985).

A consultative psychological examination of Claimant was performed by Dr. Meck on

June 25, 2008, and a finding was made that Claimant had a pain disorder resulting from both psychological factors and his general medical condition. (Tr. 270-90.) Dr. Meck included a handwritten annotation on the Medical Source Statement of Ability To Do Work-Related Activities (Mental) that "cognitive blunting will occur as pain level increases." (Tr. 281.) However, of the six factors to be considered in a determination of the extent to which an individual will be restricted in carrying out work-related mental activities, Dr. Meck determined none to be either "marked" or "extreme" and only one to reach the "moderate" level (ability to make judgments on complex work-related decisions). (*Id.*) Three factors were assessed at the "mild" level and two were indicated as "none." (*Id.*) Thus, even as to the one factor determined to be "moderate" in causing limitations on the Claimant's ability to perform work-related mental activities, Claimant could nonetheless function satisfactorily in a work setting in Dr. Meck's professional opinion. As pointed out by the Commissioner in his Memorandum in Support of the Commissioner's Decision, this opinion is the only evidence of Claimant's mental condition. (R. 12 at 8.) Despite bearing the burden of proof in establishing his disability under the Act, Claimant produced no other evidence in this regard.

In evaluating the opinion of Dr. Meck, the ALJ specifically relied on the June 25, 2008, evaluation and further noted that Dr. Meck confirmed the validity of the scoring related to Claimant's IQ. (Tr. 12.) The ALJ further noted the diagnosis of pain disorder with psychological factors. (*Id.*) The ALJ then went on to find that after considering the evidence of record as a whole, Claimant had medically determinable impairments that could

June 25, 2008, and a finding was made that Claimant had a pain disorder resulting from both psychological factors and his general medical condition. (Tr. 270-90.) Dr. Meck included a handwritten annotation on the Medical Source Statement of Ability To Do Work-Related Activities (Mental) that "cognitive blunting will occur as pain level increases." (Tr. 281.) However, of the six factors to be considered in a determination of the extent to which an individual will be restricted in carrying out work-related mental activities, Dr. Meck determined none to be either "marked" or "extreme" and only one to reach the "moderate" level (ability to make judgments on complex work-related decisions). (*Id.*) Three factors were assessed at the "mild" level and two were indicated as "none." (*Id.*) Thus, even as to the one factor determined to be "moderate" in causing limitations on the Claimant's ability to perform work-related mental activities, Claimant could nonetheless function satisfactorily in a work setting in Dr. Meck's professional opinion. As pointed out by the Commissioner in his Memorandum in Support of the Commissioner's Decision, this opinion is the only evidence of Claimant's mental condition. (R. 12 at 8.) Despite bearing the burden of proof in establishing his disability under the Act, Claimant produced no other evidence in this regard.

In evaluating the opinion of Dr. Meck, the ALJ specifically relied on the June 25, 2008, evaluation and further noted that Dr. Meck confirmed the validity of the scoring related to Claimant's IQ. (Tr. 12.) The ALJ further noted the diagnosis of pain disorder with psychological factors. (*Id.*) The ALJ then went on to find that after considering the evidence of record as a whole, Claimant had medically determinable impairments that could

reasonably be expected to produce the symptomology as alleged by Claimant. (Tr.13.) However, the ALJ found further that the Claimant lacked credibility in his complaint as to the intensity, persistence and limiting effect of the symptoms since they were inconsistent with the residual functional capacity assessment.

> In terms of claimant's alleged inability to perform work-related activities the corroborating medical evidence documents a history of physical and mental impairments but they do not prevent the claimant from performing all work related activities in the national economy. . . . No physician has rendered an opinion of disability and the objective evidence supports only mild limitations.

(Tr.13.)

The ALJ next specifically discussed and considered the daily activities the Claimant performed without any difficulty, including household chores such as washing clothes, vacuuming floors and grocery shopping. (Tr.13.) It was also noted by the ALJ that Claimant enjoyed his hobby of collecting lawn mowers. (*Id.*) The ALJ articulated his determination of the Claimant's lack of credibility as to the limiting effects of recurrent pain by noting that despite his complaints of pain, the Claimant did not obtain medical treatment or buy prescription medication. (*Id.*) The ALJ also noted that although the Claimant asserted that he could not "pay the bill[s]" to obtain medical care and medicine, he nonetheless purchased two to three packs of cigarettes each day. (Tr. 13, 33-34.) Such testimony can and should be weighed and considered by the ALJ and was done so here. *See East v. Barnhart,* 197 F. App'x. 899 (2006). Considering the record as a whole, the ALJ's finding that Claimant is not disabled is amply supported by the evidence and should be affirmed. Claimant can clearly meet the physical, mental and sensory requirements of work available in the national

economy and perform with at most a single moderately limiting factor the cognitive and intellectual requirements of such work. *See generally Ehrisman v. Astrue,* 2010 WL 1780248 (11th Cir. May 5, 2010).

**II.     Did the ALJ err in failing to perform a Psychiatric Review Technique Form?**

Claimant's second assertion of error is that the ALJ failed to employ the Psychiatric Review Technique Form (PRTF) in evaluating the Claimant's pain disorder and low intelligence quotient in the disability determination. (R. 10 at 14.) The Commissioner, in response, concedes that the ALJ should have followed the special technique and rated the Claimant's mental impairment using the prescribed form but asserts that the discussion by the ALJ of Dr. Meck's findings incorporated the mode of analysis contemplated by the PRTF such that remand merely to complete the form is not required. (R. 12 at 11.)

It has been established that a mechanical application and use of the prescribed PRTF form is not required where the ALJ has applied the mode of analysis contemplated by the PRTF form. In *Ehrisman v. Astrue,* 2010 WL 1780248, decided May 5, 2010, the Eleventh Circuit Court of Appeals explained that the PRTF incorporates an evaluative technique and where the ALJ's decision indicates that he appropriately incorporated the PRTF mode of analysis into his findings of fact and conclusions there is no error in his failure to use the prescribed form. *Id.* at *2. The issue is better framed as whether the ALJ actually utilized the special technique contemplated by the form in conducting the mandated separate evaluations, which requires using a four-point scale to determine how Claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning;

concentration, persistence or pace; and no episodes of decompensation." 20 C.F.R. § 1520a(c); 20 C.F.R. § 416.920a(c); *see also Ehrisman*, 2010 WL 1780248 at *2.

In carrying out the sequential evaluation process, the ALJ found that the Claimant had a severe mental impairment as a result of his low IQ at steps two and three of the process. Thus, the required "colorable claim of mental impairment" contemplated by Social Security regulations is met and beyond contention. *See Moore v. Barnhart,* 405 F.3d 1208, 1214 (11th Cir. 2005). The ALJ found further, however, that the severe mental impairment did not meet or equal a listed impairment pursuant to 20 C.F.R. § 404.1520(a)(ii), (iii). (Tr. 11.) In reaching the conclusion that the Claimant did not therefore meet the statutory definition of "disabled," the ALJ expressly relied on the evaluation and opinion of Dr. Meck, whose opinion is the only evidence in the record as to the mental condition of the Claimant. (*Id.*)

As noted above, Claimant bears the burden of establishing his disability. *Kirkland*, 480 F.2d at 48. The record here clearly establishes that Dr. Meck appropriately evaluated the Claimant in each of the four prescribed areas (Tr. 279-90), and the ALJ addressed and accepted the factual determinations as to each area made by Dr. Meck. (Tr. 12.) Then, based on such factual findings, the ALJ concluded that Claimant had failed to meet his burden to establish that he was unable to work. (*Id.*)

Included in the evaluative process performed by Dr. Meck is a narrative of his interview of the Claimant which includes a statement by the Claimant that "since I've been off my disability I've gone back to work twice." (Tr. 285.) Claimant also stated that he had worked at a convenience store and a food market and "before that I was getting social

security for my back and memory problems." (Tr. 285.) The narrative history provided by Claimant was then developed by Dr. Meck in conducting the Mental Status Examination which included his finding that Claimant was well oriented and appropriately attentive. (Tr. 286-87.) In his assessment of Claimant's current level of functioning, Dr Meck noted that Claimant described his typical day as "watch TV, work outside, go down to the restaurant . . . (and) shop at Wal-Mart." (Tr. 286.) Claimant testified that he would "wash clothes, cut the grass" as daily activities of life. (*Id.*) He also related he enjoys watching television and ". . . go(ing) to the show and restaurants . . ." (*Id.*) Claimant expressed appropriate concern about his lack of employment but stated that he adapted by picking up scrap metal for income. (Tr. 287.) Dr. Meck noted that Claimant can drive a tractor and had done so the day prior to the evaluation while helping his roommate store car parts. (*Id.*) Dr. Meck completed an Assessment of Intellectual/Cognitive Functions and found Claimant "Low Average" on the Verbal Index, "Average" on the Perceptual Organization Index, "Low Average" on the Working Memory Index and "Low Average" on the Processing Speed Index. (Tr. 290.) Claimant was also determined to have the ability to read at a high school level (Tr. 289), manage financial affairs and to suffer no difficulties in maintaining social functioning (Tr. 290). Claimant further testified at the hearing that while he did not keep his room or car neat, he nonetheless kept his shed and tools in an orderly manner. (Tr. 41.)

Claimant's primary contention as to this asserted error is the failure of the ALJ to use the an actual PRTF in rendering his determination as to Claimant's disability. The record, however, establishes that the ALJ appropriately incorporated the PRF mode of analysis in

analyzing Claimant's impairments and correctly determined that the Claimant had a residual functional capacity with limitations to perform daily work activities. A vocational expert opined that there were jobs available in the national economy which Claimant could perform such as routing clerk, mail clerk and furniture rental consultant. (Tr. 14, 15.) Considering the record as a whole with particular note being made of the ALJ's discussion of the extensive evaluation performed by Dr. Meck and his resulting conclusion that despite impairments, Claimant is capable of performing a range of light work (Tr. 14) his finding that Claimant is not disabled is correct and should be affirmed.

**WHEREFORE**, it is the recommendation to the United States District Judge that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

THIS the 29th day of September, 2010.

    S/Stephen Hyles
    UNITED STATES MAGISTRATE JUDGE

lws